IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


CORISA SELF,                                10-CV-316-BR

        Plaintiff,                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


ROBYN M. REBERS
McGinty & Belcher
694 High Street NE
P.O. Box 12806
Salem, OR 97309
503-371-9636

        Attorneys for Plaintiff


1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**DAVID MORADO**
Regional Chief Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA  98104
(206) 615-3621

            Attorneys for Defendant


**BROWN, Judge.**

        Plaintiff Corisa Self seeks judicial review of a final decision of the Commissioner of the Social Security Admini-stration (SSA) in which he denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

        For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff filed his applications for SSI and DIB on November 8, 2006, and alleged a disability onset date of February 28, 2006.  Tr. 116-24.[1]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on October 7, 2009.  Tr. 20-60.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a VE testified.

The ALJ issued a decision on October 30, 2009, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 5-18.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on March 5, 2010, when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born on July 22, 1973 and was 36 years old at the time of the hearing.  Tr. 16.  Plaintiff graduated from high school.  Tr. 16.  He has past relevant work experience as a security guard, roofer, construction worker, commercial cleaner, groundskeeper, materials handler, maintenance worker, building maintenance repairer, woodworking shop-hand, and maintenance

---

[1]  Citations to the official transcript of record filed by the Commissioner on August 3, 2010, are referred to as "Tr."

supervisor.  Tr. 16.

Plaintiff alleges disability due to a seizure disorder, degenerative disc disease, obesity, depression, and post-traumatic stress disorder (PTSD).  Tr. 10-11.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 13-16.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.*

4 - OPINION AND ORDER

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is

potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R.

§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p at
*1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d
1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's
RFC is at the heart of Steps Four and Five of the sequential
analysis engaged in by the ALJ when determining whether a
claimant can still work despite severe medical impairments.  An
improper evaluation of the claimant's ability to perform specific
work-related functions "could make the difference between a
finding of 'disabled' and 'not disabled.'"  SSR 96-8p at *4.

     In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also*
20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

     If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20
C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden
shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can do.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The
Commissioner may satisfy this burden through the testimony of a

VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since his February 28, 2006, alleged onset date.  Tr. 10.

At Step Two, the ALJ found Plaintiff has the severe impairments of a seizure disorder, degenerative disc disease, and obesity.  Tr. 10.  The ALJ found Plaintiff's other alleged impairments of PTSD and a thyroid condition are nonsevere. Tr. 11.

At Step Three, the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1; specifically, Plaintiff's impairments do not meet or medically equal Listing 11.03.  Tr. 12.  The ALJ also found Plaintiff has the RFC to perform unskilled light work "except that [Plaintiff] cannot work overhead or be exposed to unprotected heights or hazards."  Tr. 12.  The ALJ further found Plaintiff has the RFC to balance, to stoop, to kneel, and to crouch frequently and to climb stairs and ramps occasionally.  Tr. 12.  Plaintiff requires

a "break in the morning and a break in the afternoon, each of a five to ten minute duration to recover from seizures" in addition to "normal breaks."  Tr. 12.  Finally, Plaintiff "can never be on ladders, scaffolds, or on hazardous machinery or equipment." Tr. 12.

At Step Four, the ALJ concluded Plaintiff is not capable of performing his past relevant work.  Tr. 16.

At Step Five, the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 16-17. Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred (1) at Step Two by failing to find Plaintiff's PTSD and thyroid condition are severe impairments, (2) at Step Three by failing to consider whether Plaintiff's impairments meet or equal Listing 11.18, (3) by improperly rejecting Plaintiff's testimony, and (4) by improperly rejecting the opinions of Plaintiff's treating and examining physicians.

## I.    The alleged error by the ALJ at Step Two was harmless.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  A

severe impairment "significantly limits" a claimant's "physical
or mental ability to do basic work activities."  20 C.F.R.
§ 404.1521(a).  *See also Ukolov*, 420 F.3d at 1003.  The ability
to do basic work activities is defined as "the abilities and
aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(a),
(b).  Such abilities and aptitudes include walking, standing,
sitting, lifting, pushing, pulling, reaching, carrying, handling,
seeing, hearing, speaking; understanding, carrying out, and
remembering simple instructions; using judgment; responding
appropriately to supervision, co-workers, and usual work
situations; and dealing with changes in a routine work setting.
*Id.*

     As noted, the ALJ found Plaintiff has the severe impairments
of a seizure disorder, degenerative disc disease, and obesity.
Plaintiff, however, asserts the ALJ erred at Step Two when he did
not find Plaintiff's alleged impairments of PTSD and a thyroid
condition are severe.

     The Ninth Circuit has held when the ALJ has resolved Step
Two in a claimant's favor, any error in designating specific
impairments as severe does not prejudice a claimant at Step Two.
*Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error in
omitting an impairment from the severe impairments identified at
Step Two was harmless when Step Two was resolved in claimant's
favor).  Because the ALJ resolved Step Two in Plaintiff's favor,

10 - OPINION AND ORDER

the Court concludes the ALJ's alleged error in failing to
identify any other alleged impairments as severe was harmless.

**II.  The ALJ erred at Step Three.**

Plaintiff contends the ALJ erred at Step Three when he
failed to consider whether Plaintiff's impairments meet or equal
Listing 11.18.

It is clear that "[a]n ALJ is not required to discuss the
combined effects of a claimant's impairments or compare them to
any listing in an equivalency determination, unless the claimant
presents evidence in an effort to establish equivalence." *Burch
v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)(citing *Lewis v.
Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) and *Marcia v. Sullivan*,
900 F.2d 172 (9th Cir. 1990)).  In *Lewis* the Ninth Circuit
concluded the ALJ's failure to consider equivalence was not
reversible error because the claimant did not offer any theory,
"plausible or otherwise," as to how his impairments combined to
equal a listing impairment.  *Lewis*, 236 F.3d at 514.

Plaintiff notes he specifically raised the question whether
his impairments meet or equal Listing 11.18 in a July 24, 2008,
letter to the Commissioner in which Plaintiff stated:

> Based on the enclosed assessment from Claimant's
> treating neurologist, Dr. Delplanche, and my
> review of the record, it is my belief that
> [Plaintiff] meets or equals the [Listing for
> 11.18]. . . .  [D]espite ongoing treatment,
> [Plaintiff] continues to suffer from complex
> partial seizures resulting from a closed head
> injury.

11 - OPINION AND ORDER

Tr. 88.

Listing 11.18 is for "cerebral trauma."  Pursuant to Listing 11.18, the Commissioner is required to "evaluate under the provisions of 11.02, 11.03, 11.04, and 12.02, as applicable."  20 C.F.R. pt. 404, subpt. P, app'x 1.  Plaintiff contends the ALJ should have considered Plaintiff's seizure disorder under this Listing in conjunction with evaluating Plaintiff under Listing 11.03 because the record reflects Plaintiff suffered serious trauma to his head in approximately 2002 and suffered seizures or seizure-like episodes following that trauma.

The Court concludes on this record that Plaintiff has presented evidence in an effort to establish equivalence to Listing 11.18, and, therefore, the ALJ erred when he failed to consider whether Plaintiff's seizure disorder meets or is equivalent to Listing 11.18.

## III. The ALJ erred when he rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th

Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" Plaintiff's RFC.  The ALJ noted "taking appropriate precautions, [Plaintiff] is able to dress, bathe, eat, prepare simple meals and assist his parents with chores and animal feeding sometimes." Tr. 13.  The ALJ also noted Plaintiff enjoys watching television and playing board games.  Tr. 13.  The record, however, reflects Plaintiff lives only quasi-independently in a trailer on his parents' property and has a caregiver to assist him as

13 - OPINION AND ORDER

recommended by Plaintiff's neurologist.  In addition, Plaintiff's reported activities are not inconsistent with his alleged limitations.  Finally, in order "to discredit a plaintiff's subjective complaints on the basis of activities of daily living, those activities must be transferable to the 'more grueling environment of the workplace,' including the ability to perform work on a sustained basis for eight hours a day, five days a week."  *Cotner v. Comm'r of the Soc. Sec. Admin.*, No. 2:09-cv-02657 KJN (TEMP), 2011 WL 902131, at *1 n.5 (E.D. Cal. March 15, 2011)(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability."); SSR 96-8p (RFC is an assessment of an individual's ability to do sustained, work-related physical and mental activities on a regular and continuing basis, which means eight hours a day for five days a week or an equivalent work schedule).

The ALJ also noted Plaintiff "has stated that he has pain that lasts all day and that everything makes the pain worse," but Plaintiff does not take any medications to alleviate his pain.  Tr. 13.  The record, however, reflects Plaintiff has taken pain

14 - OPINION AND ORDER

medication when directed to by his doctors, but Curtis Delplanche, M.D., Plaintiff's treating neurologist, told Plaintiff to limit his use of narcotics.  Tr. 265, 272.

The Court concludes on this record that the ALJ erred when he rejected Plaintiff's testimony because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

**IV.  Medical opinion testimony.**

Plaintiff contends the ALJ erred when he improperly rejected the opinions of Dr. Delplanche, treating neurologist; Karleen Swarztrauber, M.D., treating neurologist; and Phyll Zuberi, M.D., examining psychiatrist.

**A.    Dr. Delplanche**

On July 17, 2008, Dr. Delplanche opined Plaintiff would "sometimes need to take unscheduled breaks during an eight-hour work day," and, as a result of his "impairments or treatment," Plaintiff would need to miss three or more days of work per month.  Tr. 463.  The AlJ gave "some weight" to Dr. Delplanche's opinion that Plaintiff would need to take unscheduled breaks. Tr. 14.  The ALJ, however, gave "little weight" to Dr. Delplanche's opinion that Plaintiff would miss three or more days of work per month because there was not any "objective medical evidence in the record to support [that] opinion." Tr. 14.

The ALJ noted Plaintiff underwent four days of

continuous monitoring in March 2009 for his seizure disorder.
Tr. 470-503.  Although Plaintiff reported two seizures during the
monitoring period, Mark K. Yerby, M.D., noted the EEG taken
during the period did not show any evidence of seizure activity.
Tr. 472.  Dr. Yerby found Plaintiff "does not have evidence of
epilepsy.  The clinical symptoms of daily seizures are not
verified or supported by 4 days of EEG monitoring.  Two ictal
events were recorded with no EEG change."  Tr. 473.  Dr. Yerby
concluded "there is [not a] place for anticonvulsant medication
in [Plaintiff's] followup."  Tr. 473.  In April 2009 after
Dr. Yerby's recommendation, Dr. Delplanche noted the results of
Plaintiff's epilepsy study and the fact that Plaintiff "has not
had any significant increase in the frequency or intensity of
these spells since the discontinuation of his prior anti-
epileptic drugs. . . .  This implies that Dr. Yerby's diagnosis
of pseudo-seizures is likely correct."  Tr. 566.  Dr. Delplanche
referred Plaintiff to a psychiatrist "to address his multiple
psychiatric issues."  Tr. 567.

        The Court concludes on this record that the ALJ did not
err when he rejected Dr. Delplanche's opinion that Plaintiff
would miss three or more days of work a month due to seizures and
recovery from those seizures because the ALJ provided legally
sufficient reasons supported by the record for doing so.

**B.    Dr. Swarztrauber**

On December 4, 2006, Dr. Swarztrauber, treating neurologist, wrote a letter stating:  "Due to Medical [*sic*] reasons, my patient, Chris Self, will be off work for 1 year." Tr. 335.  The ALJ rejected Dr. Swarztrauber's opinion because Dr. Swarztrauber failed to include any support for her statement. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The Court concludes on this record that the ALJ did not err when he rejected Dr. Swarztrauber's opinion that Plaintiff would be off work for one year because the ALJ provided legally sufficient reasons supported by the record for doing so.

**C.    Dr. Zuberi**

The ALJ noted Plaintiff was examined by Dr. Zuberi in March 2009 for evaluation of Plaintiff's panic attacks and anxiety.  Tr. 15.  The ALJ noted:

> While Dr. Zuberi found that the claimant had a depressed mood during the examination, he did not diagnose him with depression.  The claimant testified that he had been prescribed Zoloft and Seroquel for [PTSD] and anxiety, however, Dr. Zuberi concluded that the claimant did not have PTSD or a panic disorder, but rather suffered from panic attacks.

Tr. 15.  The ALJ gave "great weight" to Dr. Zuberi's opinion. The record reflects, however, that Dr. Zuberi's Axis I diagnosis

17 - OPINION AND ORDER

of Plaintiff was "[r]ule out PTSD from drug-related violence."
Tr. 480.  In addition, Dr. Zuberi recommended switching Plaintiff
from Prozac to Zoloft "because Zoloft has much better data in
terms of PTSD treatment."  Tr. 481.  Thus, Dr. Zuberi's
recommendation contradicts the ALJ's conclusion that Dr. Zuberi
found Plaintiff did not suffer from PTSD.

      The Court concludes on this record that the ALJ erred
when he concluded Plaintiff's PTSD was not severe because that
conclusion was based on an inaccurate understanding of
Dr. Zuberi's medical opinion.


**REMAND**

    The Court must determine whether to remand this matter for
further proceedings or to remand for calculation of benefits.

    The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

    The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000).  The court should grant an immediate award

of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary.  As noted, the ALJ did not evaluate whether Plaintiff's impairments in combination meet or equal Listing 11.18 and the ALJ did not appear to consider that Listing in his decision.  Thus, the issue of equivalence must be resolved before a determination as to disability can be made.  In addition, the ALJ erred to the extent that he based his evaluation of the level of severity of Plaintiff's PTSD on an inaccurate understanding of Dr. Zuberi's diagnosis.  Thus, the issue of the severity of Plaintiff's PTSD must be resolved before a determination of disability can be made.

Accordingly, the Court remands this matter for further proceedings related to a determination as to whether Plaintiff's impairments meet or equal Listing 11.18 and as to the severity of Plaintiff's PTSD.

19 - OPINION AND ORDER

**CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 29th day of March, 2011.


                              /s/ Anna J. Brown
                              _____
                              ANNA J. BROWN
                              United States District Judge

20 - OPINION AND ORDER